IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| NORRIS BROWN, | * | |
|     Plaintiff, | * | |
| v. | * | CASE NO. 4:09-CV-130-CDL-GMF |
| JOHN DARR, *et al.*, | * | 42 U.S.C. § 1983 |
|     Defendants. | * | |

## REPORT AND RECOMMENDATION

Plaintiff has filed the above-styled civil rights action alleging that Defendants John Darr, Nurse Jane Doe, Dr. Lloydstone Jacobs, Paul Morris, and Dane Collins violated his federally protected civil rights by failing to provide him with adequate medical care for an eye condition. Presently pending before the court is the motion to dismiss filed by Defendants Morris, Collins, and Darr, (Doc. 24), and the motion for a protective order filed by Dr. Jacobs, (Doc. 30). Plaintiff was notified of his right to respond to Defendants' motion to dismiss, (Doc. 26), and has filed several documents since (Docs. 25, 31, & 34).

## LEGAL STANDARD FOR MOTION TO DISMISS

The standard for a motion to dismiss was altered by the United States Supreme Court case of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which overturned the fifty year old test of "no set of facts" established in *Conley v. Gibson*, 355 U.S. 41 (1957). The Court of Appeals for the Eleventh Circuit addressed the new standard in *Financial Security Assurance, Inc. v. Stephens, Inc.*, stating:

> In order for the plaintiff to satisfy his "obligation to provide the grounds of his entitlement to relief," he must allege more than "labels and conclusions"; his

>complaint must include "[f]actual allegations [adequate] to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (May 21, 2007) (citations and quotations omitted). Stated differently, the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief," 127 S. Ct. at 1966-67. Moreover, "while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam). In ruling on a motion to dismiss for failure to state a claim, the analysis "is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam). The court must "constru[e] the complaint in the light most favorable to the plaintiff and accept[] as true all facts which the plaintiff alleges." *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). Nevertheless, if a complaint does not include sufficient factual allegations "'to raise a right to relief above the speculative level'" and "'to raise a reasonable expectation that discovery will reveal evidence of'" the plaintiff's claim or claims, then the complaint must be dismissed. *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 556). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## FACTUAL BACKGROUND

Plaintiff, a pre-trial detainee in the Muscogee County Jail, alleges that on October 2,

2009, he woke up in the afternoon and observed that he was having difficulty seeing out of his right eye. (Doc. 1 at 6). He asked an unnamed shift officer to notify the medical staff about his condition. *Id.* After receiving no response from medical staff within two hours, Plaintiff asked another unnamed shift officer to again notify the medical staff. *Id.* Plaintiff alleges that this officer informed him "that medical had been notified and they said as long as I was able to see out of one eye then I was okay." *Id.*

The next day, Plaintiff was seen by a nursing assistant in the prison. (Doc. 1 at 6). Plaintiff alleges the nursing assistant examined his eye and then asked him to read an alphabet chart on the wall; Plaintiff alleges he was unable to read the chart. *Id.* "Aside from that," Plaintiff asserts, "I was not given any medical attention." *Id.*

On October 5, 2009, Plaintiff was seen by Defendant Dr. Jacobs. (Doc. 1 at 6). Plaintiff alleges that Dr. Jacobs determined that Plaintiff's eye was damaged, and he referred Plaintiff to a specialist at the "West Central Clinic." *Id.*

On October 7, 2009, Plaintiff was seen at West Central where he was apparently diagnosed with a burst vessel in his eye. (Doc. 1 at 6). The clinic also noted that Plaintiff's eye was dilated. *Id.* Plaintiff was "not given any medicine for the soreness, discomfort, or blurred vision" he was experiencing. *Id.*

On October 20, 2009, Plaintiff was taken back to West Central where was examined by Dr. Mayfield. (Doc. 1 at 6). Dr. Mayfield allegedly informed Plaintiff that "whatever was causing the damage in my eye could lead to a stroke or heart attack." *Id.* Dr. Mayfield also requested to see medical records detailing a visit to the Medical Center a week earlier. *Id.*

Plaintiff was scheduled to see Dr. Mayfield the following month, *id.*, although he appears to have filed the instant lawsuit prior to this appointment.

Plaintiff contends that Defendants failed to provide him with adequate medical attention for his eye condition. (Doc. 1 at 2). Plaintiff contends that this alleged violation of his federally protected rights entitles him to (1) "a directive to the defendants to give me the proper medical treatment for my eyes," (2) release from jail; and (3) "psychological, compensatory, and punitive damages of 1.5 million dollars." (Doc. 1 at 7).

## DISCUSSION

### I. Motion to Dismiss Filed by Defendants Darr, Morris, and Collins

Defendants Darr, Morris, and Collins have moved to dismiss Plaintiff's Complaint for failure to exhaust. In the Prison Litigation Reform Act ("PLRA"), Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, the United States Supreme Court has emphasized that an inmate must *fully and properly* exhaust all available administrative remedies before he can file a Section 1983 lawsuit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The court has no discretion to waive the exhaustion requirement in the event a claim has not been fully and properly exhausted prior to filing. *See Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th

Cir. 1998); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). "Proper" exhaustion requires a prisoner to comply with the specific prison grievance procedural requirements. *See Woodford*, 548 U.S. at 95. An inmate must also "provide with his grievance all relevant information reasonably available to him." *Brown v. Sikes*, 212 F.3d 1205, 1208 (11th Cir. 2000).

The Eleventh Circuit has addressed the proper form of a pretrial motion challenging a plaintiff's failure to exhaust his administrative remedies, holding:

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."

*Bryant v. Rich,* 530 F.3d 1368, 1374-75 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). Defendants therefore properly raised their exhaustion defense in an unenumerated Rule 12 motion to dismiss. *See id.* at 1375. When motions to dismiss are based on issues not enumerated under Rule 12(b), such as here, then Federal Rule of Civil Procedure 43(c) governs and "permits courts to hear evidence outside of the record on affidavits submitted by the parties." *Id.* at 1377 n.16. Thus, as Defendants have done here, the parties may submit documentary evidence concerning the exhaustion issue and doing so will not require the conversion of the motion to dismiss into a summary judgment motion. In addition, the

judge may resolve factual questions concerning a plaintiff's alleged failure to exhaust nonjudicial remedies, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.* at 1376 (footnote omitted).

Shortly after its decision in *Bryant*, the court developed a two-step process to assist courts in deciding a motion to dismiss for failure to exhaust administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). Specifically, the court held:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082-83 (internal citations omitted); *see also Williams v. Marshall*, 319 F. App'x 764, 767 (11th Cir. 2008) (per curiam). Defendants, however, "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082.

Defendants contend that Plaintiff failed to exhaust the prison's grievance procedure with respect to his inadequate medical care claims. In support of this contention, Defendants provide the affidavit of Defendant Collins, the Commander and Warden of the Muscogee County Jail. Collins explains that upon entering the Muscogee County Jail, each inmate is

given a copy of the Muscogee County Jail Inmate Handbook, which contains the grievance procedure. (Collins Aff. ¶¶ 3-5, Jan. 12, 2010). The grievance procedure, including the appeal, is completed on one form. (*Id.* ¶ 6). An inmate is required to file a written grievance within five days of the incident about which he complains, or within five days of when the inmate reasonably should have discovered the incident. (*Id.* ¶ 7). Once an inmate files a written grievance form, a Grievance Officer responds directly below the inmate's narrative. (*Id.* ¶ 8). The form is returned to the inmate, who may circle "yes" beside the word "appeal" to indicate a desire to appeal the Grievance Officer's response. (*Id.* ¶ 9). If the inmate indicates that he wishes to appeal, the form is taken to the Jail Administrator, who responds to the inmate's grievance on the same form. (*Id.* ¶ 10). An appeal to the Administrator fully exhausts the grievance system offered at Muscogee County Jail. (*Id.* ¶ 12).

Collins serves as the Jail Administrator. (Collins Aff. ¶ 13). After having reviewed Plaintiff's entire grievance file, Collins avers that Plaintiff filed two grievances concerning the loss of his vision, one on October 20, 2009 and one on December 2, 2009. (*Id.* ¶¶ 14-15). Facially, at least, these grievances were not timely filed in accordance with the prison's grievance policy. (*See* Collins Aff. ¶ 19 ("The written grievances filed on October 20, 2009 and December 2, 2009 were outside the five-day limit.")). Plaintiff, however, contends that he filed an additional grievance *before* October 20th, during "the 1st week of the incident when I lost my vision." (Doc. 25 at 1). Plaintiff states that an unidentified officer who was "working the floor didn't sign off on it, nor was it answered that day, or the next." *Id.* Plaintiff also states that "[o]nce I found out I placed a 2nd grievance against the administration &

explain[ed] to them I've given them time to reply to my complaint concerning my 1st grievance and I needed to speak to someone." *Id.* Plaintiff contends this request was ignored. *Id.* On his October 20th grievance, Plaintiff states, "This is my second grievance form in this matter." (Doc. 1-2).

At the first step of *Burnside* review, the court must assume the veracity of the allegations in Plaintiff's Complaint and the amendments thereto. The court can therefore assume that Plaintiff did, in fact, file a grievance within five days of the date he claims he lost his vision; the court can further assume that Plaintiff never received a response to this grievance and that the lack of response prompted him to file the October 20th grievance. (*See* Doc. 25 at 1). The court could even assume that the October 20th grievance was timely filed in accordance with prison policy. Even given these assumptions, however, Plaintiff cannot show that he fully and properly exhausted the prison's grievance procedures. On the copy of the October 20th grievance Plaintiff attached to his Complaint, Plaintiff indicated that he did not wish to appeal the Grievance Officer's decision. (*See* Doc. 1-2). Plaintiff therefore failed to fully exhaust his October 20th grievance. *See, e.g., Anderson v. Donald*, 261 F. App'x 254, 256 (11th Cir. 2008) (per curiam) (finding that inmate did not exhaust his administrative remedies "neither appealed his grievable claims after presenting them to the proper grievance committee, nor appealed his disciplinary claim after presenting it to the warden" as required by the applicable grievance procedure).

Plaintiff did properly appeal his December 2009 grievance, thereby fully exhausting it. (*See* Doc. 24-3 at 10). As previously mentioned, however, to the extent Plaintiff

complains about his loss of eyesight, the December grievance is untimely. (Doc. 24-3 at 3 ("If your complaint is not handled informally, you may file a written grievance within five days of discovery or when you reasonably should have discovered the incident.")). More importantly, although Plaintiff did appeal this grievance, it was filed after the instant lawsuit. The Eleventh Circuit has held that

> [t]o the extent [a plaintiff] relies upon the grievances and appeals he submitted after filing his initial complaint, such grievances and appeals cannot be used to support his claim that he exhausted his administrative remedies, because satisfaction of the exhaustion requirement was a precondition to the filing of his suit, and thus, must have occurred before the suit was filed.

*McDaniel v. Crosby*, 194 F. App'x 610, 613 (11th Cir. 2006) (per curiam) (citing *Alexander*, 159 F.3d at 1325-26)).

In sum, even taking Plaintiff's factual assertions as true, neither Plaintiff's October 20th or December grievances can operate to exhaust his administrative remedies as a matter of law. Because the court can resolve the exhaustion issue at the first step of *Burnside* review, there is no need to make specific factual findings regarding whether Plaintiff actually filed an earlier grievance. Defendants Darr, Collins, and Morris are entitled to dismissal of Plaintiff's claims on grounds that Plaintiff failed to fully and properly exhaust the prison's grievance policy.

## II.   Claims Against Defendant Dr. Jacobs

Dr. Jacobs chose to file an Answer to Plaintiff's Complaint rather than a pre-answer motion to dismiss. *See generally* Fed. R. Civ. P. 12. It is well established that the PLRA's exhaustion requirement is an affirmative defense. *Miller v. Pryor*, 315 F. App'x 149, 149

(11th Cir. 2008) (per curiam) (citing *Jones v. Bock*, 549 U.S. 199, 213-17 (2007)). Thus, a defendant who fails to raise exhaustion as a basis for dismissal may waive any such defense. *Cf., e.g., Hewitt v. Mobile Research Tech.*, 285 F. App'x 694, 696 (11th Cir. 2008) (per curiam) ("If a party fails to raise an affirmative defense in the pleadings, the party ordinarily waives its right to raise the issue at trial."). In this case, however, Dr. Jacobs raised exhaustion as an affirmative defense in his Answer and Amended Answer, (Doc. 27 at 2; Doc. 32 at 2), and he therefore did not waive the defense. Furthermore, "[a] complaint is subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim.'" *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)). Plaintiff's Complaint and Amended Complaint, as well as the documents attached thereto, demonstrate that Plaintiff failed to fully and properly exhaust the grievance procedure because he never appealed his October 20th grievance. (*See* Doc. 1-2 (indicating Plaintiff did not wish to appeal the October 20th grievance)). Thus, the court's analysis regarding the exhaustion issue is equally applicable to Plaintiff's claims against Dr. Jacobs, and those claims are likewise subject to dismissal. In addition, Dr. Jacobs's motion for a protective order permitting him to file Plaintiff's medical records under seal, (Doc. 30), should be denied as moot.

**III.   Plaintiff's Amended Complaint**

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings in federal court. Rule 15(a)(1) provides:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is

>required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

"In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although the district court should freely give leave to amend 'when justice so requires,' the court may properly deny leave to amend if it concludes that the proposed amendment would be futile." *Brown v. Lewis*, No. 09-13257, 2010 WL 94596, at *4 (Jan. 12, 2010) (internal citation omitted). An amendment to a complaint may be considered "futile" if "the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (internal quotation marks omitted).

Plaintiff has already filed one amended complaint as a matter of right, (Doc. 31), and the court has considered the allegations in this document in ruling on the presently pending motions. Plaintiff has not sought leave of the court or indicated that he has received written consent from the opposing parties to file another amended complaint. Thus, the court will construe Plaintiff's second Amended Complaint as a motion to amend his pleadings.

In his second Amended Complaint, Plaintiff seeks to add claims for (1) "denial of ready and available access to notary public" and (2) "'denial of meaningful access to the courts' in reference to inadequate access to a reasonably adequate law library for preparation of legal actions." (Doc. 34 at 1, 3). Plaintiff also seeks to add Prison Health Services, Inc., as a defendant to this action. (Doc. 34 at 2). Each of these proposed amendments would be futile, and thus, Plaintiff's motion should be denied.

Plaintiff does not specify why he seeks to add Prison Health Services, Inc. as a

11

defendant to this lawsuit, and his claims against this proposed defendant could be dismissed on this basis alone. *See Douglas*, 535 F.3d at 1321-22 (finding complaint subject to dismissal when it failed to connect specific defendants with an alleged legal wrong). Presumably, however, Plaintiff seeks to hold Prison Health Services liable for his allegedly inadequate medical care. As previously discussed, Plaintiff has failed to exhaust his administrative remedies with respect to that claim. Because the complaint as amended would therefore be futile, denial of leave to amend is appropriate.[1]

Plaintiff's proposed amendments seeking to add claims for denial of access to a notary public or to the courts are also futile. The United States Supreme Court has recognized that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (internal quotation marks omitted). A prisoner must therefore be afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 351 (internal quotation marks omitted). In order to demonstrate a violation of the constitutional right of access to the courts, an inmate

---

[1]Likewise, Plaintiff's claims against nurse "Jane Doe" are subject to dismissal. Although Plaintiff does refer to a nurse in some of his pleadings, (*see, e.g.,* Doc. 31 at 1), he never specifies that this nurse is the "Jane Doe" that he wishes to sue. While fictitious-party practice is not necessarily precluded in this Circuit, it is incumbent on the plaintiff to provide more specific guidance regarding the defendants he wishes to sue. *See, e.g., Moulds v. Bullard*, 345 F. App'x 387, 390 (11th Cir. 2009); *see also Douglas*, 535 F.3d at 1321-22. Furthermore, as discussed in this Report and Recommendation, to the extent Plaintiff would seek to amend his Complaint to include the real "Jane Doe," Plaintiff has failed to exhaust his administrative remedies with respect to any claims that "Jane Doe" failed to provide him with adequate medical care.

12

must demonstrate that the alleged shortcoming in the prison's facilities or policies "hindered his efforts to pursue a legal claim." *Id.* In other words, the prisoner must show an actual injury. *See id.* This type of injury can take several forms; for example, the prisoner might show

> that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* Requiring that a prisoner allege an actual injury prevents courts from involving themselves in the minutiae of prison administration while preserving the ability of the court to remedy any inadequacies that actually produce a cognizable injury. *See id.* at 361-62. At this stage in the litigation, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 358 (internal quotation marks omitted).

In this case, Plaintiff has failed to allege any injury caused by the prison's alleged failure to provide timely access to a notary public or an adequate prison library.[2] Because

---

[2] The court notes that when Plaintiff was notified that Defendants had filed a motion to dismiss based on exhaustion grounds, he was cautioned that Federal Rule of Civil Procedure 43(c) governs and "permits courts to hear evidence outside of the record on affidavits submitted by the parties." *Bryant*, 530 F.3d at 1377 n.16. While Plaintiff may have believed that the services of a notary would have been necessary to provide sworn affidavits, "[f]ederal law does provide an alternative to making a sworn statement, but requires that the statement include a handwritten averment, signed and dated, that the statement is true under the penalties of perjury." *West v. Higgins*, 346 F. App'x 423, 426 (11th Cir. 2009) (citing 28 U.S.C. § 1746). Moreover, the court took Plaintiff's factual allegations as true, even absent sworn documentation thereof. The court therefore can conceive of no injury that the alleged lack of notary services has caused in this case.

Plaintiff has not made even general factual allegations of injury, he has not established that he has standing to pursue his charge these conditions resulted in a less-than-adequate opportunity to present his claims before a court. *See Lewis*, 518 U.S. at 349. Thus, even if Plaintiff were permitted to add these claims to his Complaint, they would still be subject to dismissal. Because these amendments would be futile, it is not necessary to permit Plaintiff to again amend his Complaint.

## CONCLUSION

WHEREFORE, IT IS HEREBY RECOMMENDED that Plaintiff's Complaint be DISMISSED in its entirety. In addition, it is recommended (1) that Plaintiff be denied leave to amend his Complaint a second time, and (2) that Defendant Dr. Jacobs's motion for protective order be denied as moot. Under 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the UNITED STATES DISTRICT JUDGE within FOURTEEN (14) DAYS after being served with a copy hereof.

SO RECOMMENDED, THIS the 3rd day of March, 2010.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mkw